## 4045. SOUTHERN EXPRESS COMPANY *v.* FANT FISH COMPANY.

1. (*a*) The consignee of goods delivered to a carrier for transportation may be presumed to be the owner of the goods, and, in the absence of either actual or constructive notice that he is not the owner, the carrier is authorized to follow the consignee's shipping instructions.

(*b*) A carrier instructed by the ostensible owner of the shipment to omit a service or the performance of a duty usually incident to the contract of carriage can not demand of him compensation for the performance of the service or duty, unless it be a service or duty required by law. One can not collect pay for service rendered to another over the latter's protest, unless, in the performance of a public duty, the service is of such a nature that its omission might affect the rights of others, or of the public, and it is therefore required by law.

2. (*a*) The fact that in the transportation of goods, likely to be damaged by delay for which the owner of the goods is in nowise responsible, a service for which a carrier is ordinarily permitted to charge compensation is the only means of preserving the shipment affords no reason for imposing liability for the payment of the usual charge for such service upon the consignee or the owner of the goods.

(*b*) Where a consignee directs the omission or non-performance of a service which may be essential for the proper transportation and preservation of a shipment perishable in its nature, he assumes all the risk of damage consequent upon the omission, which is traceable to it. In such a case the consignee's direction protects the carrier from any liability which might have ensued from the omission of this service or duty but for the direction of the consignee.

(*c*) If, in the transportation of shipments of a perishable nature, the directions of the shipper or consignee (the owner) result in such deterioration or decay as to render further transportation impracticable or unsafe, the direction of the owner will terminate the contract of carriage, and the carrier may, without liability, discharge or destroy the shipment.

DECIDED FEBRUARY 4, 1913. REHEARING DENIED MARCH 1, 1913.

Trover; from city court of Savannah—Judge Freeman. October 19, 1911.

In August, 1910, the Fant Fish Company of Savannah, Ga., wrote the following letter to the agent of the Southern Express Company in that place: "We desire to put you on notice that we do not want any more of the fish coming to us from Florida points re-iced while in transit. If any are delayed it is not our fault, and your company will have to use their judgment in disposing of them. We should have no cause to pay re-icing charges on fish that come to us by express from Florida, when they make the schedule time." Thereafter the Fant Fish Company ordered from a Mr. Montgomery, of Oak Hill, Florida, 400 pounds of trout and 500 pounds of bottom fish, of the aggregate value of $75, and Montgomery delivered this shipment to the Southern Express Company at Oak Hill, Florida, on the afternoon of April 1, 1911. The shipment had not at that time been paid for by the purchasers, but the Fant Fish Company, at Savannah, was designated in the bill of lading as the consignee.

In the ordinary operation of the railroad trains these fish would have left Oak Hill about 2 o'clock in the morning of April 2, and would have reached Savannah in the afternoon of the same day. Due to a congestion on the line of the Florida East-Coast Railway, the shipment did not leave Oak Hill until 2 o'clock in the afternoon of April 2 and arrived at Jacksonville at 1.30 o'clock in the morning of April 3. The fish left Jacksonville on the next train, about 8 or 9 o'clock a. m. of April 3, and were delivered to the Fant Fish Company in Savannah, with transportation and icing charges collectible, at 5 o'clock p. m. of April 3. The shipment was thus delayed something over twenty-four hours. The fish company claimed that three barrels of the fish had not been re-iced, but there is evidence in behalf of the express company that the entire shipment was re-iced at Jacksonville; and inasmuch as the verdict in favor of the plaintiff was directed, it must be conceded that the entire shipment was in fact re-iced. The fish company tendered the express company the transportation charges on the fish, and icing charges on those barrels which they thought had been re-iced, but declined to pay the icing charges on the three barrels which they contended had not been re-iced. The express company declined to deliver the fish without the payment of all charges, and the fish company brought suit in trover. On the trial of the case the court directed a verdict in favor of the plaintiff. The express company moved for a new trial, which was refused.

*Lawton & Cunningham, A. R. Lawton Jr., R. C. & P. H. Alston,* for plaintiff in error.

*Osborne & Lawrence, E. H. Abrahams,* contra.

RUSSELL, J. (After stating the foregoing facts.) It appears from the briefs that the court directed a verdict in favor of the plaintiff upon the ground that the icing charges were shown upon separate way-bills, and were not shown upon the way-bill which bore the transportation charges, and that, according to the tariff under which this shipment moved, the icing charges should have been shown upon the original way-bill. There is nothing in the record to indicate that the order directing the verdict was placed upon this ground, but we could not set aside the judgment, even if it was based solely upon that reason. The rule is well settled that the inquiry of a reviewing court is directed to the question as to whether the judgment rendered is right; and if it be right, it will be sustained, although the trial court may have assigned the wrong reason for its rendition. *Everett* v. *Southern Express Co.,* 45 *Ga.* 303 (3), 306. We therefore pass, for the present, from a consideration of the validity of this reason for the judgment, and address ourselves first to an examination of features of the case which we deem more important.

It is undisputed that the Southern Express Company was notified by the Fant Fish Company not to re-ice shipments of fish being transported to it from Florida; that the fish in question were transported by the express company from Florida to the Fant Fish Company, as consignee; that they were re-iced; that the delay of more than twenty-four hours in the shipment was not due to any fault of the consignee; that the charges made by the express company for the re-icing are those filed with and approved by the interstate-commerce commission; that re-icing would not have been necessary for the preservation and proper transportation of the fish, if the delivery had been effected in the usual period of time required for a shipment by express from the initial point, and that upon the failure of the consignee to pay the icing charges, delivery was refused. No point is made upon the fact that the plaintiff waived its notice to the express company as to two barrels of the fish, by offering to pay the icing charges upon that much of the shipment; and so, to our mind, it appears that the case is one for the application of the elementary principle that

29

no one is required to pay for something which he does not want, and which he has protested against having supplied to him. No one is required to be benefited if he does not wish to be; and certainly no one is required to accept and pay for something which another assumes will be beneficial to him, when he does not entertain the opinion that it will be beneficial. A can not perform a service for B over B's protest and then compel B to pay for it. Measured by this rule, and considering the case apart from the distinctive rules applicable to common carriers, the question presented by this record would appear to be one of easy solution.

It is insisted, however, by counsel for the plaintiff in error that it is the duty of the carrier to safely deliver each and every shipment which it receives for transportation, and that when it is necessary for the preservation of a perishable shipment that it be re-iced, it must charge for the service the rate filed with the interstate-commerce commission and posted in accordance with the rules of that tribunal. Counsel for the plaintiff in error therefore insist that the direction of the consignee not to re-ice a shipment so well known to be perishable as fresh fish must be disregarded in any case, and especially in a case where the direction to omit icing is given by a consignee whom the express company does not know to be the true owner of the shipment. It is further insisted that not only is the tariff which is allowed by the interstate-commerce commission, and the charge for icing, in the nature of a regulation which is reasonable, and which therefore can be imposed by the carrier, but that to permit one shipper to direct that his fish be shipped without icing from a particular section, in avoidance of its general rule, would tend to throw its business as a carrier into hopeless confusion and to involve it in interminable difficulties.

Two incontestible legal principles are involved in the consideration of the case, to which voluminous reference is made in the briefs. In our opinion neither of these propositions can be questioned, and we understand their validity to be conceded by the defendant in error: first, that the interstate-commerce commission has the exclusive power of fixing all rates and regulations as to interstate shipments; and, second, that the rates as filed and approved by the interstate-commerce commission must in every case be collected by the carrier. *Georgia Railroad* v. *Creety, 5 Ga. App.* 424 (63 S. E 528); Texas & Pacific Ry. *v.* Abilene Cotton Oil

Co., 204 U. S. 426-7; Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 167 U. S. 479. And so far as the propriety of a rate fixed by the interstate-commerce commission, for a service for which a shipper has contracted or which he has voluntarily accepted, is concerned, this court would be without jurisdiction to consider any such phase of the case if it were involved; for, in the case of Baltimore & Ohio Railroad Co. v. Pitcairn Coal Co., 215 U. S. 481, the Supreme Court of the United States held that "regulations which are primarily within the competency of the Interstate Commerce Commission are not subject to judicial supervision or enforcement until that body has been afforded an opportunity to exert its administrative functions."

After a careful review of the record in this case, it seems to us that the only substantial issue between the parties is as to the application of well-settled legal principles to the particular facts of the case, and the determination of the question as to whether the carrier had the authority to charge for a service which it must be conceded it was not authorized by the owner of the shipment to perform,—nay, more, a service which the consignee had expressly requested it *not* to perform. It is settled that the true owner may give directions as to the shipment of his goods delivered to a carrier for transportation. Redfield on Carriers (1st ed.), § 34; 1 Hutchinson on Carriers, § 1; 5 Am. & Eng. Enc. Law, 364-5; U. S. Express Co. v. Kountze, 8 Wallace, 342 (19 L. ed. 457); Sager v. Portsmouth R. Co., 31 Maine, 228 (50 Am. Dec. 659); *Frank* v. *Southern Ry. Co.,* 5 *Ga. App.* 574 (63 S. E. 656). It is likewise settled that in the absence of knowledge, either actual or constructive, to the contrary, the consignee may be presumed to be the owner of the goods which have been accepted for shipment. Hutchinson on Carriers, § 660 et seq., § 1304; *Central Ry. Co.* v. *Willingham,* 8 *Ga. App.* 818 (70 S. E. 199).

We conclude, therefore, that such a consignee may direct the manner of the transportation of a shipment addressed to him, and that the carrier, in following the directions of such a consignee, will not subject itself to any liability which may result from the consignee's directions (*Western & Atlantic R. Co.* v. *Exposition Mills,* 81 *Ga.* 524 (3b), 530 (7 S. E. 916, 2 L. R. A. 102), unless the directions involve the omission or non-performance of some service or duty the performance of which is by law made essential

in its transportation. This being true, does any rule of the inter-
state-commerce commission require the express company to ice in
transit fish delivered to it for shipment, in disregard of the instruc-
tion of the owner, or of a consignee, under conditions which au-
thorize the presumption that he is the owner? It is well settled,
of course, that the main purpose of the statute which forbids the
charging of a rate different from that approved by the interstate-
commerce commission, and likewise forbids a failure to collect
the charges in full, is to prevent discrimination; and upon this
principle counsel for the plaintiff in error ground the argument
that the fish company is liable for the charges for icing, although
this service may have been done in disregard of its notice and over
its protest. Whether the consignee would be liable for such charges,
even when the icing was in disregard of its orders and in positive
disobedience of its instructions, would depend upon two things.
(1) Was the icing necessary for the preservation of the fish and
their safe transportation, in the usual course of such shipments and
within the purview of the contract of carriage, as contemplated
by the parties. (2) If the shipment was delayed and the delay
not occasioned by any fault of the consignee, and the carrier, being
liable for the deterioration or decay of the fish, thought it neces-
sary, and if it was necessary, to ice the fish in order to preserve
them, and the icing was due to this extraordinary circumstance
alone, would the carrier still be required by the rule of the inter-
state-commerce commission to charge for the icing, because, by a
coincidence, it happened that the best means of preserving the fish
from the damage incident to the carrier's own delay was the appli-
cation of a service for which the carrier was required to collect
pay in a case in which icing was requested or permitted by the
consignee or owner of the goods? As to the first question: The
evidence is undisputed that ordinarily no re-icing is necessary to
preserve fish shipped from Oak Hill, Florida, to Savannah, Geor-
gia, and it could not have been within the contemplation of the
consignee, because the consignee had expressly notified the express
company not to re-ice any fish coming to the consignee from Flor-
ida. We come then to the second matter of inquiry. It is well set-
tled, of course, that the consignor must sue for any breach of the
contract of shipment, but the consignee has a right of action
for any damages accruing during the transportation, and the

consignee, if the carrier followed his directions and the shipment was damaged in consequence of these directions, would assume the entire risk and would himself have to stand the damages. It is also well settled that for damage resulting from any delay in transportation occasioned by the act of God or of the public enemies, or where the fault of the consignor or of the owner has occasioned or contributed to the delay, or the delay is the result of misfortune or accident, the consignee is not entitled to recover for damage resulting from the fact that the period of transportation was so lengthened as that perishable shipments deteriorated in value or became valueless. But it is equally well settled that when the delay in transportation results from some congestion of traffic (and this was the cause of the delay in the present case), and the shipment is damaged or deteriorates in value by reason of delay, not occasioned by any act of the shipper as the other party to the contract, the owner of the goods may recover. If, therefore, in the present case, the express company, having been notified by the consignee not to re-ice the fish shipped to it from points in Florida (and the distance being such that it was not necessary to the safe transportation of the fish in the usual course that they should be re-iced), was compelled to ice them in order to escape a liability for damage to which delay in transportation not excused by law might subject it, and not because the rule of the interstate-commerce commission required that all fish should be iced, then the consignee should not be liable for the expense of the icing, or for any charge dependent upon the icing.

It may happen that some service which is enumerated in the tariffs filed with the interstate-commerce commission may, in a given case, where the carrier's own preservation from liability demands action on his part, be the only preventive from loss; but it can not be said in such a case that the use of that preventive is a necessary part of the ordinary transportation of that article, and certainly it can not be held that there was involved in the contract, either express or implied, anything which devolved upon that carrier the duty of collecting the charge usual for such a service, if it was properly an incident of the transportation. The collection of the charge in the latter case is necessary to prevent discrimination in favor of one shipper or consignee and against another of either class. The use of a means of preventing damage,

applicable alike in every case, except as to amount, where the carrier itself is exposed to liability, is not essential in connection with the subject of transportation. The interstate-commerce commission, under the provisions of the interstate-commerce act as amended June 18, 1910, fixes the rate at which services of various kinds shall be performed by carriers of various kinds, but the exercise of this power to promulgate tariffs for services actually performed in transportation does not deprive the passenger, or the owner of goods delivered for transportation, of the right to contract for such services as either, as the case may be, may deem necessary for the safe transportation of his property or of his person, or compel him to pay for services which he may not think necessary, and which may in fact be unnecessary to his own comfort or safety, if a passenger, or to the safety and despatch of his goods, if he be the owner. The interstate-commerce commission has full authority to promulgate rates and rules regulating and fixing the charges of sleeping-car companies, and where one becomes a passenger upon a sleeping-car he subjects himself to the regulations, and the sleeping-car company must collect and the passenger must pay the fixed rates—no more and no less. The same is true as to the rates and regulations applicable to the passenger upon a railroad company's train; but it does not follow that it is within the power of the railroad company to compel a passenger to occupy a sleeping-car, and to pay the rate which the commission allows to be charged for the sleeping-car service, when the passenger does not wish to avail himself of it. Likewise a carrier might be authorized, by the approval of the interstate-commerce commission to fix and charge a rate for icing but it would not be a matter wholly within the discretion of the carrier as to whether a shipment should be iced. If this were true, the carrier might elect to ice shipments which would be damaged, rather than benefited, by the operation. The owner has the right to direct the manner and the route in which his goods shall be shipped; and, as ruled above, in the absence of anything appearing to the contrary, the carrier may assume that the consignee is the owner of the goods delivered to it by the consignor for shipment to the consignee, without reservation.

The evidence demanded the finding for the plaintiff, irrespective of the reason upon which the trial judge is alleged to have based

his judgment, and we have dealt first with this phase of the question. But the fact that the icing charges did not appear upon the original way-bill, in accordance with the tariff which was introduced in evidence, would itself have constituted a sufficient reason for directing a verdict for the plaintiff. It is argued by counsel for the plaintiff in error that the icing charges were necessarily put upon a separate way-bill, because, at the time the original bill of lading was issued and delivered, the service had not been performed, and, therefore, the charges for the icing could not be entered upon the original way-bill. We do not assent to the assertion that the charges could not have been entered upon the original way-bill; but, granting that this contention is sound, that fact would not impose upon the Fant Fish Company the duty of paying the icing charges before the express company delivered the shipment, and as a condition precedent to delivery. The consignee of a shipment who is in possession of a bill of lading is entitled to have the goods delivered to him (unless the carrier knows, or has reason to believe, that he is not the actual owner of the shipment) upon payment of the charges specified in the bill of lading. A carrier may refuse to deliver a shipment to any other than the consignee or an agent of the consignee, but he can not refuse to deliver to the consignee who is in possession of the bill of lading, unless he has sufficient reason to doubt that he is the true owner, and unless the consignee refuses to pay the freight charges as shown by the original bill of lading. When the consignee pays or tenders payment of the charges which are entered upon the original bill of lading, he is entitled to possession of the shipment, and a refusal to deliver is conversion. A carrier might have a right of action against the consignee for the charges upon the second way-bill, but would have no lien upon the shipment, nor could it withhold delivery of the shipment because of non-payment of these extra charges.

The judge of the city court did not err in refusing to grant a new trial.                                       *Judgment affirmed.*