# WESTERN AND ATLANTIC RAILROAD COMPANY *v.* WHITE PROVISION COMPANY.

1. A petition alleged in substance as follows: The plaintiff purchased a car-load of hogs and caused them to be shipped from Kelso, Tennessee, to Atlanta, Georgia. The hogs could have been shipped in a car thirty-six feet long, for which the tariff rate, as published by the carriers, between those points was $53. The vendor ordered a car of that length for the purpose of the shipment. Under the tariff schedule the carriers reserved the right, for their own convenience, to furnish a longer car than that called for or required by shippers. In that event the rate of freight is the price of the car called for, when such car is sufficient to carry the shipment. The first carrier, the Nashville, Chattanooga and St. Louis Railway, for its own convenience, instead of furnishing a car thirty-six feet long (which would have been sufficient), furnished one thirty-eight feet long, and this fact was duly noted on the bill of lading. The freight was prepaid, and this fact was also entered. When the car arrived at destination, the last carrier, the defendant, refused to deliver the hogs without the payment of an additional amount of $2.65, though notified of the facts by the plaintiff, and against its protest; and thereby damage resulted. *Held,* that a State court had jurisdiction of such a suit to recover damages for the alleged tort; and an application to and investigation by the interstate commerce commission was not necessary before beginning such an action.

2. Under the facts set out in the preceding headnote, the plaintiff could sue the final carrier which was alleged to have committed the tort, and was not compelled to sue the initial carrier.

     AUGUST 18, 1914.

Action for damages.    Before Judge Pendleton.    Fulton superior court.    June 11, 1913.

*Tye, Peeples & Jordan,* for plaintiff in error.
*Dorsey, Brewster, Howell & Heyman,* contra.

LUMPKIN, J.   This case comes before us on a bill of exceptions assigning error on the overruling of a demurrer to a petition.   The leading question involved is whether the suit is one of which the State court has jurisdiction, or whether the claim must first be presented to the interstate commerce commission, under the act of Congress of 1887, to regulate interstate commerce, and its amendments (24 Stat. 384, U. S. Comp. Stat. 1901, p. 3165; 34 Stat. 590, U. S. Comp. St. Supp. 1911, p. 1301).   It has been declared that the act of Congress, whilst prohibiting unreasonable and unjust charges, unjust discriminations, and undue preferences by carriers subject to its provisions, also prescribed the manner in which that prohibition should be enforced.   Accordingly, after a schedule of rates was established as prescribed by law, it was held that a shipper could not maintain an action at common law in a State court for excessive and unreasonable freight rates exacted on interstate shipments, where the rates charged were those which had been duly fixed by the carrier according to the act and had not been found unreasonable by the interstate commerce commission. Texas &c. Ry. Co. *v.* Abilene Oil Co., 204 U. S. 426 (27 Sup. Ct. 350, 51 L. ed. 553, 9 Ann. Cas. 1075).   The distribution to shippers of coal-cars, including those owned by the shippers and those used by the carrier for its own fuel, in interstate commerce, is a matter involving preference and discrimination, and one for investigation by the interstate commerce commission.   Baltimore & Ohio R. Co. *v.* United States, 215 U. S. 481 (30 Sup. Ct. 164, 54 L. ed. 292). And this has been applied even to criminal cases.   United States *v.* Pacific & Arctic Co., 228 U. S. 87 (33 Sup. Ct. 443, 57 L. ed. 742).   But not every suit against an interstate carrier is necessarily within the principle of the rulings above cited.   Nor is the present suit of that character.

The plaintiff alleged the following, among other things:   It purchased a car-load of hogs and caused them to be shipped from Kelso, Tennessee, to Atlanta, Georgia.   The hogs could have been shipped in a car thirty-six feet long, for which the tariff rate, as

published by the carriers, between those points was $53. Its vendor ordered a car of that length for the purpose of the shipment. Under the tariff schedule the carriers reserved the right, for their own convenience, to furnish a longer car than that called for or required by the shippers. In that event the rate of freight is the price of the car called for, when such car is sufficient to carry the shipment. The first carrier, the Nashville, Chattanooga and Saint Louis Railway, for its own convenience, instead of furnishing a car thirty-six feet long, which would have been sufficient, furnished one thirty-eight feet long, and this fact was duly noted on the bill of lading. The freight was prepaid, and this fact was also entered. When the car of hogs arrived at their destination, the last carrier, the defendant, refused to deliver the hogs without the payment of an additional amount of $2.65, though notified of the facts by the plaintiff, and against its protest; and thereby damage resulted as set out. On demurrer we must deal with the case as made by the petition.

It will be seen that the plaintiff does not contend that the fixed tariff rate is unreasonable, illegal, or discriminatory, but that its vendor paid the fixed rate and had due notation thereof made, and that the terminal carrier, in spite of this, refused to perform its duty as a common carrier by delivering the shipment without requiring payment of an additional and wholly illegal demand. By section 9 of the act of 1887 (U. S. Comp. Stat. 1901, p. 3159) it was declared that any person claiming to be damaged by any common carrier subject to the provisions of the act might either make complaint to the commission as thereinafter provided, or might bring suit for the recovery of damages for which the carrier might be liable under the provisions of the act, in any district or circuit court of the United States of competent jurisdiction. In section 22 it was declared that "Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." These sections have not been repealed. In so far as later amendments have made provisions for fixing or changing schedules or standards for freight rates in interstate carriage, the determination in regard to discriminatory practices, and the like, by the interstate commerce commission, and for the investigation of certain matters by that body before suit may be brought in any

court, the original act and the amendments must be read in connection with each other so as to harmonize the entire act. Robinson *v.* Baltimore & Ohio R. Co., 222 U. S. 506 (32 Sup. Ct. 114, 56 L. ed. 288). But we do not think it was the intention of Congress broadly to require every claim for damages of any character arising under the interstate commerce act, or from an illegal refusal by an interstate carrier to deliver freight on which the proper charges have been prepaid, to be submitted to the interstate commerce commission before suit can be filed. Referring to such a position, the brief of counsel for defendant in error contains the following: "It would make the interstate commerce commission the clearing-house for every claim brought against a railroad company on interstate business. The commission, to meet such a situation, would have to be indefinitely increased, with branches in every center of railroad activity, or else the shipping public would be put to extreme inconvenience, resulting in their abandonment of legal rights because of the difficulty of securing them. It must be clearly apparent that an act intended for the benefit and protection of the shipping public would totally fail in such purpose if the courts gave to it the construction contended for by counsel for plaintiff in error."

In Galveston &c. Ry. Co. *v.* Wallace, 223 U. S. 481 (32 Sup. Ct. 205, 56 L. ed. 516), suit was brought in a State court against a railroad company, as the initial carrier, for failure to deliver goods shipped from points in Texas to a consignee in Lowell, Massachusetts, under what is commonly referred to as the Carmack amendment to the Hepburn act of 1906 (34 Stat. 584, 595, U. S. Comp. St. Supp. 1911, p. 1307), requiring the initial carrier receiving property for transportation from a point in one State to a point in another to issue a receipt or bill of lading therefor, and declaring that such initial carrier shall be liable to the lawful holder thereof for any loss, damage, or injury to the property by any common carrier to which the property may be delivered or over whose line or lines it may pass. It was held that damage caused by failure to deliver goods was not traceable to a violation of the interstate commerce law, and was not within the provisions of sections 8 and 9 of the act; and that the jurisdiction of the commission or of the United States courts was not exclusive. It was further said by Mr. Justice Lamar in the opinion: "Where the statute creating the right provides an exclusive remedy, to be enforced in a particular

way, or before a special tribunal, the aggrieved party will be left to the remedy given by the statute which created the right. But jurisdiction is not defeated by implication. And, considering the relation between the Federal and the State government, there is no presumption that Congress intended to prevent State courts from exercising the general.jurisdiction already possessed by them, and under which they had the power to hear and determine causes of action created by Federal statute." Divine *v.*.Unaka National Bank, 125 Tenn. 98 (140 S. W. 747 (4), 39 L. R. A. (N. S.) 586). In Banner *v.* Wabash R. Co., 131 Iowa, 405 (108 N. W. 759), it was held that a State court had jurisdiction of a suit to recover, not an overcharge under the interstate commerce act, but a wholly unjust and unauthorized exaction demanded and collected not only in violation of the act itself but in violation of the contract made with the plaintiff. In St. Louis &c. Ry. Co. *v.* Roff Oil &c. Co. (Texas Civ. App.), 128 S. W. 1194, it was held that State courts are not without jurisdiction to interpret a tariff, though it is interstate and established and required by the act of Congress. See also Galveston &c. Ry. Co. *v.* Piper & Co., 52 Tex. Civ. App. 569 (115 S. W. 107) ; Atlanta &c. Ry. Co. *v.* Horne, 106 Tenn. 73 (59 S. W. 134) ; St. Louis &c. R. Co. *v.* Heyser, 95 Ark. 412 (115 S. W. 562, 22 Ann. Cas. (1912A) 610). In Louisville & Nashville R. Co. *v.* Mottley, 211 U. S. 149 (29 Sup. Ct. 42, 53 L. ed. 126), it was held that the jurisdiction of the circuit court of the United States must be determined by the allegations of the petition filed therein, and could not be based on an alleged defense which might be set up, and which would be invalid under some law or provision of the constitution of the United States. And the case now before us must be determined on the allegations of the petition. See, in this connection, *Southern Express Co.* v. *Fant Fish Co.,* 12 *Ga. App.* 447 (78 S. E. 197).

It was contended that the suit, if it could be maintained at all, should have been brought against the Nashville, Chattanooga and St. Louis Railway, because, by the amendment of 1906 (U. S. Comp. St. 1911, p. 1307), above referred to, the initial carrier was made liable. But it was expressly provided in that amendment that "nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." The wrong here complained of was com-

mitted by the defendant, not by the initial company, and the plaintiff is not excluded from suing the wrong-doer.

There was no error in overruling the general grounds of demurrer to the plaintiff's petition.

*Judgment affirmed. All the Justices concur.*