NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.



# SUPREME COURT OF GEORGIA
Case No. S22C1252, S22C1259

August 21, 2023

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

SMITH v. HI-TECH PHARMACEUTICALS, INC.; and vice versa.

The Supreme Court today denied the petition for certiorari in these cases.

*All the Justices concur.*

Court of Appeals Case No. A22A0170

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

, Clerk

PINSON, J., concurring in the denial of certiorari.

I agree with the Court's decision to deny further review in this case. I write separately to flag some questions about the doctrine of primary jurisdiction.

The doctrine of primary jurisdiction allows a court to "refer" an issue in a case to an administrative agency and either stays or dismisses the case while the agency resolves the issue. See WRIGHT AND MILLER, 33 FEDERAL PRACTICE & PROCEDURE § 8366 (2d ed.) (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (113 SCt 1213, 122 LE2d 604) (1993)); ADMINISTRATIVE LAW PRACTICE AND PROCEDURE § 6:10 (Aug. 2022 update). The doctrine developed in the U.S. Supreme Court, and federal courts have applied it for well over a century, see *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426 (27 SCt 350, 51 LEd 553) (1907), in rate-setting cases, see *Great Northern R. Co. v. Merchants' Elevator Co.*, 259 U.S. 285 (42 SCt 477, 66 LEd 943) (1922); *U.S. Navigation Co. v. Cunard Steamship Co.*, 284 U.S. 474 (52 SCt 247, 76 LEd 408) (1932); *Far East Conference v. United States*, 342 U.S. 570 (72 SCt 492, 96 LEd 576) (1952); *United*

*States v. Western Pacific R. Co.*, 352 U.S. 59 (77 SCt 161, 1 LE2d 126) (1956); labor-relations cases, see *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (79 SCt 773, 3 LE2d 775) (1959); *Brown v. Hotel & Restaurant Employees & Bartenders Intl. Union Local 54*, 468 U.S. 491 (104 SCt 3179, 82 LE2d 373) (1984); *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180 (98 SCt 1745, 56 LE2d 209) (1978); antitrust cases, see *Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289 (993 SCt 573, 34 LE2d 525) (1973); *Chicago Mercantile Exch. v. Deaktor*, 414 U.S. 113 (94 SCt 466, 38 LE2d 344) (1973); food and drug-labeling cases, see *Weinberger v. Bentex Pharmaceutiacls, Inc.*, 212 U.S. 645 (93 SCt 2488, 37 LE2d 235) (1973); and more, see *Southern Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F3d 735 (2005) (property); *Tassy v. Brunswick Hosp. Center, Inc.*, 296 F3d 65 (2002) (public health).

Over time, however, the doctrine has percolated into a number of state courts, including ours. See *Georgia Power v. Cazier*, 303 Ga. 820, 825 n.5 (815 SE2d 922) (2018) (collecting state cases). That is

where my questions arise. Our Court has often warned against "uncritically importing" holdings of federal courts into Georgia law. See, e.g., *Elliott v. State*, 305 Ga. 179, 188 (824 SE2d 265) (2019); *Buckner-Webb v. State*, 314 Ga. 823, 834 (878 SE2d 481) (2022) (Pinson, J., concurring). Of course, the U.S. Supreme Court's holdings interpreting or applying federal law are binding on state courts. But when is applying the doctrine of primary jurisdiction a matter of interpreting or applying federal law? And if the answer is "only sometimes," is there a basis in Georgia law for applying the doctrine when federal law isn't involved? I offer some preliminary thoughts on these questions below.

1. The first thing to know is that the doctrine of primary jurisdiction "is really two doctrines." *Arsberry v. Illinois*, 244 F3d 558, 563 (7th Cir. 2001) (Posner, J.). See also Diana R. H. Winters, *Restoring the Primary Jurisdiction Doctrine*, 78 OHIO ST. L.J. 541, 547 (2017) (explaining that "[p]rimary jurisdiction can be separated into two strains"). In its "central and original form," the doctrine applies "when, in a suit involving a regulated firm but not brought under

the regulatory statute itself, an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve." *Arsberry*, 244 F3d at 563. In these "exclusive agency jurisdiction" cases, a court refers an issue to an agency because a relevant regulatory statute requires the agency to resolve it—generally for reasons grounded in a need for uniformity. Id. (citing *Western Pacific R. Co.*, 352 U.S. at 64, 77; *Cahnmann v. Sprint Corp.*, 133 F3d 184, 487 (7th Cir. 1998); *Advance United Expressways, Inc. v. Eastman Kodak Co.*, 965 F2d 1347, 1352-1353 (5th Cir. 1992); *City of Peoria v. General Electric Cablevision Corp.*, 690 F2d 116, 121-122 (7th Cir. 1982)).

This form of the doctrine is not so much a "doctrine" as it is simply a species of statutory interpretation. *Abilene Cotton Oil*, 204 U.S. 426, long credited as the first application of the doctrine of primary jurisdiction, see Winters at 552, is a good example. There, a shipper of cotton seed sued a rail carrier in state court for charging an unreasonable rate in violation of an alleged common law right. See *Abilene Cotton Oil*, 204 U.S. at 430-431. The U.S. Supreme Court held that the shipper had to raise the argument that the rate

4

was unreasonable before the federal Interstate Commerce Commission, with whom the charged rate had been published and filed. In support of that conclusion, the Court did not rely on its belief that the ICC had the experts who were better suited to resolve that question. Instead, it marshaled arguments from the text and context of the Interstate Commerce Act. See id. at 436-437 (explaining that the "fundamental question" was the "scope and effect" of the Interstate Commerce Act, and that the case "must rest upon an interpretation of the text of the act"). After canvassing the Act in detail, the Court reasoned that allowing courts to adjudicate whether a rate was reasonable in individual cases would give rise to the potential for conflicting rulings and thus non-uniform and discriminatory rates, in direct conflict with the Act's provisions that were meant, above all, to ensure uniform and nondiscriminatory rates. See id. at 440-441. And even though the Act included a savings clause for common law remedies, that clause "[could not] in reason be construed as continuing in shippers a common-law right, the continued existence of which would be absolutely inconsistent with the provisions of the

act." Id. at 446. Finally, the argument that funneling questions about the reasonableness of rates to the Commission first would be inefficient or even "harmful" "affords no justification for so interpreting the statute as to destroy it." Id. at 447. Put simply, the shipper had to bring its argument to the ICC because the statute, as the Court construed it, required as much. See id. at 447-448.

Some decisions following *Abilene Cotton Oil* are in accord with this statutory-construction-based approach: in cases otherwise properly before a lower court, the Court would hold that the court was required to refer issues to an agency for resolution first because the governing statutory scheme put the issues within the exclusive jurisdiction of the agency. See *Cunard Steamship Co.*, 284 U.S. at 485 (holding that arguments in the context of an antitrust claim about the reasonableness of rates fell "within the exclusive preliminary jurisdiction of the Shipping Board" based on "[t]he scope and eviden[t] purpose of the Shipping Act, as in the case of the Interstate Commerce Act"); *Garmon*, 359 U.S. at 246 (holding in the context of labor relations that "since such [union] conduct is arguably within

6

the compass of s 7 or s 8 of the Act, the State's jurisdiction is displaced").

But since *Abilene Cotton Oil*, the doctrine of primary jurisdiction has also developed a prudential strain. Instead of sending an issue to an agency first because a statute contemplates it, courts often ground this referral merely in a desire for the agency's expertise. See *Arsberry*, 244 F3d at 563 ("The doctrine of primary jurisdiction is sometimes defined quite differently, as a doctrine that allows a court to refer an issue to an agency that knows more about the issue, even if the agency hasn't been given exclusive jurisdiction to resolve it."). See, e.g., *Astiana v. Hain Celestial Grp., Inc.*, 783 F3d 753, 762 (9th Cir. 2015) ("The purpose of referral to the FDA was not for the agency to adjudicate Astiana's claims, but to provide expert advice that would be useful to the court in considering this lawsuit."); *Am. Trucking Assns., Inc. v. Interstate Commerce Commn.*, 682 F2d 487, 491 (5th Cir. 1982) ("The doctrine of primary jurisdiction . . . allows a court when faced with an issue which calls into question an area

of special expertise of an agency to suspend proceedings pending referral of the issue to the agency for its official position."). For instance, the U.S. Supreme Court later explained the doctrine as "a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference*, 342 U.S. at 494.[1] The Court goes on to explain that agencies should get the first crack at those kinds of issues because "they are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." Id. And in *Ricci*, 409 U.S. 289, the Court offered largely prudential reasons for applying the doctrine rather than addressing whether the relevant statutory scheme required first resort to the agency.

---

[1] Oddly enough, this was the Court's description of *Cunard*, 284 U.S. 474, a decision that mentions agency expertise only in passing and quite plainly (in my view) applies the exclusive-agency-jurisdiction, statutory-construction-based form of the doctrine. See id. (holding that arguments in the context of an antitrust claim about the reasonableness of rates fell "within the exclusive preliminary jurisdiction of the Shipping Board" based on "[t]he scope and eviden[t] purpose of the Shipping Act, as in the case of the Interstate Commerce Act").

See id. at 302-304 (in antitrust case, referring issues about whether certain conduct violated rules of commodity exchange to Commodity Exchange Commission because answering that question was necessary for resolving the underlying antitrust suit, "some facets of the dispute . . . are within the statutory jurisdiction of the Commodity Exchange Commission," and "adjudication of that dispute by the Commission promises to be of material aid in resolving the immunity question" that was part of the antitrust case). Over time, lower federal courts have incorporated this and similar agency-expertise-focused language into a variety of multi-factor balancing tests for applying the doctrine. See Winters at 568 (collecting circuit tests).

2. Teasing out these two different forms the doctrine of primary jurisdiction may help answer the questions about whether and to what extent the doctrine is a part of Georgia law.

Start with the first, core form of the doctrine. As I mentioned above, the core doctrine requires courts to send to agencies issues that the governing statutes contemplate the agencies must first resolve. Put simply, this is just statutory interpretation. And of course,

Georgia courts too interpret statutes as needed to resolve cases. So if a litigant argues in a given case before our courts that a statutory scheme—federal or state—requires referral to an agency to resolve some issue material to the litigation at hand, Georgia courts will necessarily "apply the doctrine of primary jurisdiction," i.e., interpret the statute, to see whether that's so. If the statute in question is federal and the U.S. Supreme Court has interpreted it, Georgia courts are bound by the Court's holdings with respect to that statute, including any conclusions about whether particular issues are within the "exclusive primary jurisdiction" of the agency in question. If the relevant statute is a state law, Georgia courts will do their own interpretive work to determine whether the statute requires an agency to resolve any particular issues in the suit. In short, there can be little doubt that the core form of the doctrine of primary jurisdiction, being merely an exercise in statutory interpretation, is equally applicable in federal and Georgia courts.

The prudential form of the doctrine seems to me a different beast. The decisions in this camp do not purport to ground the referral of issues to agencies in the relevant statutory scheme, but rather in the desire to draw on an agency's special expertise to decide complex technical issues that judges may know little about. See, e.g., *Weinberger*, 412 U.S. at 654 (approving referral to the FDA for the determination whether a drug was "safe and effective" within the meaning of a statute because that question "necessarily implicates complex chemical and pharmacological considerations," and "[t]hreshold questions within the peculiar expertise of an administrative agency are appropriately routed to the agency, while the court stays its hand"); *Far East Conference*, 342 U.S. at 573-575. Nor does that basis for seeking the agency's advice on such issues appear to be rooted in positive law, like a statute or a constitution. Rather, it seems to be a reflection of the Court's judgment that federal courts have the power and discretion to "accommodat[e] the complementary roles of courts and administrative agencies in the enforcement of law" when they have concurrent jurisdiction over an issue, *Far*

11

*East Conference*, 342 U.S. at 574. See also id. (calling the creation of the doctrine "one of those creative judicial labors whereby modern administrative law is being developed as part of our traditional system of law"). Indeed, the Court has said before that the doctrine allows courts to "allocat[e] the law-making power over certain aspect of commercial relations" between courts and agencies. *Western Pacific R. Co.*, 352 U.S. at 65 (citing Louis L. Jaffe, *Primary Jurisdiction Reconsidered. The Anti-Trust Laws*, 102 UNIV. PA. L. REV. 577, 583-584 (1954)).

If that's right—if this prudential, discretionary aspect of the doctrine is built on a judgment about the power and discretion of federal courts to allocate decision-making in certain kinds of cases between courts and federal agencies—then the extent to which this form of the doctrine is necessarily or properly a part of Georgia law is far less clear. It seems to me that the question whether the courts of our State have this kind of broad power to allocate or sequence decision-making between agencies and courts has to be answered by reference to Georgia law, not federal law. And outside of a state law

that requires our courts to play that role in a specific context, it is not readily apparent to me where in our law such a power would come from. But in any event, this judgment about whether our law gives Georgia courts that kind of authority is one that would require careful deliberation. Cf. *Buckner-Webb*, 314 Ga. at 836-837 (Pinson, J., concurring) (questioning Georgia courts' adoption of the federal collateral order doctrine and explaining that "[i]t is an especially troubling kind of error to arrogate to ourselves as appellate courts the authority to bend the limits of our own power to review cases" (citing *Duke v. State*, 306 Ga. 171, 182, 186-187 (829 SE2d 348) (2019) (acknowledging "core separation of powers principle" that prevents courts from claiming authority to allow appeals outside of statutory scheme); *Gable v. State*, 290 Ga. 81, 85 (720 SE2d 170) (2011) (explaining that "courts have no authority to create equitable exceptions to jurisdictional requirements imposed by statute" (citation and punctuation omitted)); *Cook v. State*, 313 Ga. 471, 479 (870 SE2d 758) (2022) (overruling "judicially creat[ed]" trial court out-of-time appeal procedure)).

(c) This prompts the question: what have our courts done with the doctrine of primary jurisdiction? Our Court and the Court of Appeals have addressed or applied the doctrine in only a few decisions.[2] By and large, those decisions have applied the first, core form of the doctrine. In a handful, we simply applied *Abilene Cotton Oil*, the seminal exclusive-jurisdiction decision. We applied that decision in

---

[2] On occasion our courts have used the terms "primary jurisdiction" or "exclusive jurisdiction" in addressing arguments that seem to be about administrative exhaustion. See, e.g., *Hunnicutt v. Ga. Power Co.*, 168 Ga. App. 525 (309 SE2d 862) (1983); *Bailey v. Wilkes*, 162 Ga. App. 410 (291 SE2d 418) (1982). These doctrines are related but distinct. A conclusion that "exhaustion" is required means that the litigant must bring the claim in the first instance to the agency, usually because the litigant is challenging some agency action. See, e.g., *Shelley v. Town of Tyrone*, 302 Ga. 297, 303 (806 SE2d 535) (2017) (requiring land owners to "exhaust[] the administrative remedies provided by law" before raising a zoning claim in court); *Ga. Dept. of Community Health v. Ga. Society of Ambulatory Surgery Ctrs.*, 290 Ga. 628, 629 (724 SE2d 386) (2012) ("This Court has consistently held that as long as there is an effective and available administrative remedy, a party is required to pursue that remedy before seeking equitable relief in superior court" under the Georgia Administrative Procedure Act. (citation and punctuation omitted)). The doctrine of primary jurisdiction applies where a case is "originally cognizable" in the courts, but an *issue* in the case must (or in the doctrine's prudential form, should) go to the agency first for resolution. See *Western Pacific R. Co.*, 352 U.S. at 63-64. See also *Arsberry*, 244 F3d at 564 ("In [prudential primary-jurisdiction] cases, either court and agency have concurrent jurisdiction to decide an issue, or only the court has the power to decide it, and seeks merely the agency's advice. (In the core of the doctrine, in contrast, the court has jurisdiction of the case, but the agency of the issue.)").

14

affirming a referral to the ICC in *Belk-Mathews Co. v. Great South-ern Trucking Co.*, 218 Ga. 610 (129 SE2d 765) (1963), and we distin-guished *Abilene Cotton Oil* in other decisions after concluding that no issue within the ICC's primary jurisdiction was present, see *W. & A.R. Co. v. White Provision Co.*, 142 Ga. 246 (82 SE 644) (1914); *Beck & Gregg Hardware Co. v. Cook*, 210 Ga. 608 (82 SE2d 4) (1954). The Court of Appeals also appears to have applied *Abilene Cotton Oil*'s version of the doctrine. See *Delta Traffic Serv., Inc. v. Snider*, 197 Ga. App. 377 (398 SE2d 430) (1990). And in *Central Georgia Railway Co. v. Culpepper*, 209 Ga. 844 (76 SE2d 482) (1953), we ad-dressed whether the National Railroad Adjustment Board had "ex-clusive primary jurisdiction" over a dispute between a carrier and its employees by reviewing U.S. Supreme Court precedent interpret-ing the National Railway Labor Act. See id. (declining to apply the doctrine based on the conclusion that the Board lacked exclusive pri-mary jurisdiction over the question). In each of these cases, our courts applied the doctrine by asking whether the relevant statutory scheme required referral of an issue to the agency. As I noted above,

15

that strikes me as an appropriate exercise in statutory interpretation well grounded in Georgia law.

But then there is *Cazier*, 303 Ga. 820. *Cazier* involved a class action against Georgia Power that alleged that the power company had been collecting municipal franchise fees from customers in amounts greater than the rates set by the Public Service Commission. In granting certiorari review, this Court asked the parties to address questions about whether the plaintiffs were required to exhaust their administrative remedies before bringing the suit. The Court ultimately held that exhaustion was not required because the plaintiffs were not seeking relief from any order of the Commission, and the case wasn't "one in which the merits are committed by law to the exclusive jurisdiction of the Commission." Id. at 823-824.

After that holding, however, the Court invoked the doctrine of primary jurisdiction. Noting the possibility that the trial court could "*misconstrue* the applicable orders of the Commission," which would create a conflict with the Commission's policy determinations, the Court offered the doctrine of primary jurisdiction as a "mechanism"

16

that could prevent the further litigation of the case from "undercutting the rate structure approved by the Commission." Id. at 824. Citing federal Court of Appeals decisions, the Court described this doctrine as a "prudential" and "discretionary" doctrine that would allow the trial court to "permit the Commission to construe its own orders." Id. at 824. The Court then explained the doctrine's operation: when "an agency order is at issue in a judicially cognizable dispute, the trial court properly may refer especially difficult or technical issues within the specialized competence of an administrative agency to the agency itself," as long as "the disputed words 'are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application, so that the inquiry is essentially one of fact and of discretion in technical matters.'" Id. at 826 (quoting *Western Pacific R. Co.*, 352 U.S. at 65-66). And the Court directed the trial court to consider on remand whether the questions of construction at issue were sufficiently technical that it should refer them to the Commission under the doctrine of primary jurisdiction. See id. at 826.

This passage in *Cazier* sounds very much like the prudential strain of the doctrine of primary jurisdiction that federal courts have applied for some time.[3] And the Court appears to have imported (or at least approved of) that form of the doctrine without identifying where in Georgia law our courts get the broad power to allocate decision-making authority between courts and agencies in this way. Instead, the Court simply "note[d] that, although the doctrine of primary jurisdiction developed principally in the federal courts, it has been recognized by the courts of last resort in a number of our sister states." *Cazier*, 303 Ga. at 825 n.5 (collecting cases). This passing footnote reference to the use of the doctrine of primary jurisdiction in federal courts and courts in other states is not, in my view, a proper or sufficient basis for recognizing this new aspect of the doctrine as a part of Georgia law for the first time. This is not to say

---

[3] Certainly the Court's language in *Cazier* lines up with the prudential form of the doctrine. That said, there might have been an argument for applying the core form of the doctrine in that case given the Court's concern that getting the answer to the questions of construction wrong could "undercut[] the rate structure approved by the Commission." Id. at 826. See *Abilene Cotton Oil*, 204 U.S. at 440-441 (relying on the potential for conflicting rulings in concluding that the Interstate Commerce Act required courts to refer questions bearing on the reasonableness of rates to the ICC).

that the prudential form of the doctrine is not properly a part of Georgia law—only that we should take a closer look in an appropriate case to consider that question.

*

The parties in this case have not presented these questions about the extent to which the doctrine of primary jurisdiction is properly a part of Georgia law. Moreover, the unusual posture of this case—a challenge under D.C. law, in Georgia courts, dealing with issues related to the jurisdiction of a federal agency—could complicate any inquiry into the scope of the doctrine of primary jurisdiction in our courts. But review of these questions may well be warranted in an appropriate case.

I am authorized to state that Justice Warren and Justice McMillian join in this concurrence.