J. C. LARKIN, ASSIGNEE OF S. A. SAWYER, *v.* M. J. HAPGOOD.

*Insolvent Law. Money paid to an Agent of the Creditor may be Recovered of the Agent. Insolvency. Preferring Creditor. Presumption. Evidence. Financial Reputation.*

1. If a debtor pays money in fraud of the insolvent law to an agent of his creditor, the assignee may recover it of the agent, although he has paid it to his principal, and no demand was made.
2. In an action by an assignee to recover money paid in fraud of the insolvent law, evidence showing the debtor's financial reputation was admissible as tending to prove that the creditor had reasonable cause to believe that the debtor was insolvent, such creditor being a business man and living in the vicinity of the residence of the witnesses.
3. The court charged as to preferring a creditor: "Did Sawyer make the payment with a view to a preference of this defendant? What was his intent about it? If he knew, or had reason to believe, that he had not property enough to pay his debts, in either case the conclusion necessarily follows that he intended a preference"; and as to insolvency: "A solvent man is one that is able to pay all his debts in full at once, or as they become due. A man who is unable to pay his debts, out of his means, as they become due, in the ordinary course of business, or whose debts cannot be collected out of such means by legal process, is insolvent." *Held,* that it was a correct statement of the law on the subject.
4. It is presumed that all the members of a community must know more or less of a matter which is one of common knowledge in such community.
5. R. L., s. 1860, insolvent law, construed.

ACTION by the assignee in insolvency of Sarel A. Sawyer to recover money paid to defendant by said Sawyer. Plea, the general issue. Trial by jury, June Term, 1883, VEAZEY, J., pre-

Larkin *v.* Hapgood.

siding. Verdict for the plaintiff. Both the defendant and Sawyer had lived for many years in Peru; and the witness, mentioned in the opinion of the court, also lived there.

It appeared that the money was paid to the defendant in 1881, but within three months of the filing of the petition in insolvency against Sawyer, which was on the 17th day of February, 1881; and that there was no evidence to show that the defendant's sister knew anything about the financial condition of Sawyer. The testimony of Geo. K. Davis was as follows:

Q. What, if any, was the reputation in a financial point of view of Sarel A. Sawyer during those years—whether good or bad?

A. I think it was generally conceded by people that he had a greater load than he could carry of debts.

Q. Whether you had as tax collector taxes unpaid against him?

A. Yes, sir, he was always behind with his taxes right along.

Q. You may state whether or not you solicited payment of those taxes from time to time?

A. Oh, yes! every tax bill that came out. Sometimes he would pay some on account, but was always about so far behind.

Albert Simonds testified that he lived in Peru about one-half mile from defendant's store; that, at the time he went into insolvency, Sawyer had for five or six years been owing him, as guardian and otherwise, about $450; that he had spoken to Sawyer about his claim, and called on him for money, but had collected none on it, interest or principal, but had had some lumber of him; that Sawyer was badly in debt; and that the speech of people for two or three years prior to his failure would say that he had a big load on his shoulders, and it was hard to pull through.

The plaintiff's counsel then asked the witness the following questions, which were seasonably objected to by defendant's counsel, but the court overruled the objection and admitted the evidence, to which ruling the defendant excepted:

Q. Why didn't you collect your claims? A. I dare not do it. Q. Tell why. A. Because I was afraid they would throw him where I would not get so much as I would to let him alone.

The defendant claimed, and asked the court to hold, that this action could not be maintained against him, because the debt

against Sawyer was not his debt, but a debt due to his sister, and was paid to him as her agent; and further asked the court to direct a verdict for him; but the court declined so to hold, and held that the debt against Sawyer should be treated just as if it had been defendant's debt against him and not his sister's; and submitted the case to the jury as though it was a debt against Sawyer in favor of the defendant himself and not his sister.

The other facts are sufficiently stated in the head notes and the opinion of the court.

*J. K. Batchelder*, for the defendant.

This action cannot be maintained against this defendant, because he acted simply as the agent of his sister in receiving the money, and paying it to her before the insolvency proceedings were commenced.

He was not the person who "received such payment," as contemplated by the statute,—R. L., s. 1860. What one does by his agent he does by himself. The act of the defendant was not immoral or dishonest. The court should have ordered a verdict for the defendant. *Hall* v. *Huntoon*, 17 Vt. 244; *Cook* v. *Whipple*, 55 N. Y. 164; *Bank* v. *Warren*, 15 N.Y. 577; *Colvin* v. *Holbrook*, 2 N. Y. 128; *Downer* v. *Brackett*, 21 Vt. 599; *In re Pierce*, 21 Vt. 611; Bump Bankr. 796. The plaintiff's action should have been brought against the principal, and not the agent. Bump Bankr. 807, 819; *Mayer* v. *Herman*, 10 Blatchf. 256; *Spear* v. *Braintree*, 24 Vt. 414. There was error in the charge as to preferring creditors. *Forbes* v. *Howe*, 102 Mass. 427; Bump Bankr. 798, 807. If the defendant's act in receiving the money was not wrong, then a demand was necessary. *Carpenter* v. *Snell*, 37 Vt. 255; *Stoddard* v. *Chapin*, 15 Vt. 443.

*Burton & Munson* and *J. G. Martin*, for the plaintiff.

The action was brought properly against this defendant. The agent is always personally liable if he has obtained money wrongfully, or fraudulently, or as a wrong-doer. Story Ag. 358; 1 Am. Lead. Cas. 640; Smith Merc. L. 201; 1 Bouv. Law

Dic. 103; Selw. N. P. 93; *Sadler* v. *Evans*, 4 Burr. 1984; *Bennett* v. *Ives*, 30 Conn. 329; *U. S. Bank* v. *Bank of Washington*, 6 Pet. 8. No demand was necesssary. *Tapley* v. *Forbes*, 11 Allen, 24. There was no error in the charge of the court. 16 Wall. 592; Bump Bankr. 408, 413, 798.

The opinion of the court was delivered by

ROYCE, Ch. J. The money which the insolvent debtor paid to the defendant, and which is sought to be recovered in this action, was paid by Sawyer to defendant, as the agent of his sister, who then resided in Massachusetts. It was paid within three months of the filing of the petition in insolvency against Sawyer, and was sent at once by the defendant to his sister. The defendant claimed that inasmuch as he was acting as agent for his sister in the receipt of the money, and that was known to Sawyer, that the action could not be maintained against him; that if the plaintiff had any right of action it was against his sister, the principal for whom he was acting. The general rule is, that where one acts for a principal, and the name of the principal is disclosed and the fact that he was acting for such principal is made known to the party with whom he deals, that the principal is alone liable; but where an agent receives money which the law prohibits him from taking, it is no defence to a suit brought by the party from whom it was unlawfully taken, or one who has acquired the right to sue for the benefit of his estate to show that he has paid the money over to his principal. In *Townson* v. *Wilson and others*, 1 Campbell, 396, it was said by Lord ELLENBOROUGH, if any person gets money into his hands illegally he cannot discharge himself by paying it over to another. *Perkins, assignee of Hughes*, v. *Smith*, 1 Wilson, 328, was an action of trover brought to recover the value of goods, which the defendant as a servant of a creditor of Hughes had received of Hughes after his bankruptcy, and had sold for his master's use. It was claimed that the action should have been against the master; but the court held that no author-

ity that he could derive from his master could excuse him from being liable in the action.

The same rule is laid down in *Miller* v. *Airs*, cited in note 38, 1 Selw. N. P. 101, and in Smith's Mercantile Law, 149 and Dunl. Paley Ag. 398 ; so that if the defendant received the money unlawfully, an action can be sustained against him in the name of the assignee to recover it back. It will be noticed that the statute s. 1860 R. L. which gives the right to recover for payments so made makes the person receiving such payments liable. To render the payment made to the defendant unlawful, Sawyer must have been insolvent at the time he made it. The defendant must have had reasonable cause to believe that he was thus insolvent, and it must have been made with a view to give a preference to a creditor or person having a claim against him. It was admitted that Sawyer was insolvent at the time he made the payment; and as bearing on the question that the defendant knew or had reasonable cause to believe, when he received the money, that he was insolvent, quite a number of witnesses were introduced on both sides as to his financial reputation. The plaintiff introduced Sarel A. Sawyer, George K. Davis, and Albert Simonds as witnesses, and that portion of their evidence which is detailed in the exceptions was received, subject to the exception of the defendant.

If the evidence objected to tended to show that the defendant had reasonable cause to believe that Sawyer was insolvent at the time he received the money it was admissible. It was held in *Bank of Middlebury* v. *Rutland*, 33 Vt. 414, in *Hard* v. *Brown*, 18 Vt. 87, *Sherman* v. *Blodgett*, 28 Vt. 149, and in *Richardson* v. *Hitchcock*, 28 Vt. 757, that one's general reputation as to solvency or insolvency was evidence of the fact. The evidence tended to show that Sawyer was in fact insolvent at the times testified to. Such facts as were testified to, and others of a similar character, make one's reputation for solvency or insolvency. And if it was competent to find the fact of his insolvency from such evidence, we are of opinion, that, situated as

the defendant was shown to have been, a business man and living and doing business in the immediate vicinity of where the witnesses resided that the evidence was admissible as tending to show that the defendant had reasonable cause to believe that he was insolvent. The weight it was to have was a matter for the jury; and the presumption is that they were properly instructed upon that subject. The notoriety of a fact may furnish evidence upon which a person to be effected by it may be found to have had knowledge of it. It is presumed that all the members of the community must know more or less of a matter which is one of common knowledge in such community; and the exclusion of such evidence as was here admitted would generally require proof of express knowledge. The exceptions taken to the charge upon the questions as to what in law would constitute insolvency, and the preferring of a creditor, are not sustained. Sec. 35 of the late U. S. B. L. is so like sec. 1860 of our insolvent law that the decisions rendered in construing that section are authority upon the construction to be given to sec. 1860. And it will be seen by a reference to Bump's Law and Practice of Bankruptcy, 466, and following pages, that the charge was in accordance with the rules established by the U. S. Courts. No demand was necessary before bringing the action. The cases relied upon to sustain that claim are cases where the property sued for or the avails of it, came rightfully into the possession of the defendant.

The judgment is affirmed.