EUGENE D. HARDY & another *vs.* AMERICAN EXPRESS
COMPANY.

Suffolk.     November 12, 13, 1902. — November 25, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Carrier.*

If an express company receives a package of goods shipped from a foreign country
for delivery in Boston C. O. D. and is notified by the steamship company that
the goods show signs of wet damage, the express company owes a duty to the
purchaser to disclose its information before demanding and receiving payment.

Where a carrier delivers goods C. O. D. and receives the purchase money and his
charges, and later the purchaser discovers that the goods are practically worth-
less and demands repayment from the carrier, after a delay during which the
carrier has transmitted the purchase money to the consignor, and without
returning the ruined goods, it is for a jury to say whether the purchaser gave
notice of his claim to the carrier within a reasonable time, and also whether
the conduct of the carrier was such as to excuse the purchaser from returning
the goods.

CONTRACT against an express company for money paid to it
by the plaintiffs for goods shipped from France C. O. D.  Writ
dated July 1, 1899.

In the Superior Court *Hopkins*, J. ordered a verdict for the
defendant on the count for money had and received, on which
the plaintiffs elected to stand.  The plaintiffs alleged excep-
tions, which after the death of *Hopkins*, J. were allowed by
*Richardson*, J.

*H. Wheeler*, for the plaintiffs.

*Roland Gray*, for the defendant.

HOLMES, C. J.   This is an action for money had and received
to recover a sum paid to the defendant for fifty sets of Balzac's
works and charges on the same, sent to the plaintiffs by Calman,
Levy and Company, from Paris.  The goods were to be delivered
to the plaintiffs at Boston by the defendant carrier, " C. O. D.,"
that is to say, on the plaintiffs' paying for the goods and charges.
The goods arrived in Boston, and the defendant was notified by
the Cunard Company on November 28, 1898, that they showed
signs of wet damage.   The next day the defendant's agent,
knowing of this notice but saying nothing about it, called on

the plaintiffs, presented a bill, and asked for a check for the amount in controversy. Earlier on the same day the plaintiffs had been notified that the goods were landed and that the money would be needed to get them through the custom-house. The sum was paid in ignorance of any trouble. The goods were not delivered to the plaintiffs until December 1, or later. On December 5 or 6, the plaintiff Hardy returned from abroad, opened the cases and discovered the damage on December 12 or 13, and on December 19 wrote to the defendant that the goods were ruined and could not be used, adding, " We feel justified in putting in a claim for the entire shipment and hold the goods subject to your inspection." Meantime the defendant had advised its Paris office by mail of the payment, and on December 16, before the plaintiffs made their claim, the Paris office had paid Calman, Levy and Company. After discussions and delays the plaintiffs wrote again in April, intimating that they had paid relying on the defendant's saying nothing to show that the books were not in proper condition, and pressing for settlement, as they had lost the use of their money for nearly five months. Later, the defendant disclaimed liability, and this suit was brought. The judge directed a verdict for the defendant, and the plaintiffs excepted.

The first question in logical order is whether the facts stated disclose or in any degree tend to prove a breach of duty on the defendant's part. If two persons are at arm's length, and each is acting and is understood to be acting at his peril, one could not recover a payment from the other on the ground of mistake of fact. *Dedham National Bank* v. *Everett National Bank*, 177 Mass. 392, 395. It may be that this would have been the situation of the plaintiff in *Lane* v. *Chadwick*, 146 Mass. 68, if he had paid the defendant express messenger on his terms in that case. But the present case is different. It would be a harsh interpretation to charge the defendant with actual dishonesty. But there is ground for maintaining that in point of law it obtained the money by false representations or an unjustifiable suppression of the truth. It did so if it was chargeable with a duty when, knowing what it had been notified of by the Cunard Company, it asked for and received the sum.

We are of opinion that the defendant was subject to such a

duty. The defendant was entitled to receive its charges from the plaintiffs only in case the plaintiffs accepted delivery of the goods. The defendant itself contends that it collected the price of the goods, which was the larger part of the sum received, as the agent of the consignors. If the defendant knew facts which would have made it wrongful in the vendors to collect the money without disclosing them, it could not retain the money against a seasonable demand, because it received it only in the vendors' right. The right to retain the charges would fall with the right to retain the principal sum. The evidence is less complete than it might be, but it would seem that these goods were at the consignors' risk and were not to be delivered until they reached Boston. *Lane* v. *Chadwick*, 146 Mass. 68. *State* v. *O'Neil*, 58 Vt. 140, 158. *State* v. *Wingfield*, 115 Mo. 428, 437. It was not disputed that the plaintiffs would have been warranted in refusing to receive them, had they known that they were spoiled. See *Lyons* v. *Hill*, 46 N. H. 49; *Murchie* v. *Cornell*, 155 Mass. 60. The defendant had notice of signs which made it likely that the goods were spoiled, and therefore had notice of the fact as it turned out. By demanding or requesting payment, the defendant affirmed by implication that it had not notice of facts which exonerated the plaintiffs from receiving the goods or paying for them, because it was receiving payment in the right of the consignors who would have been bound to disclose the facts. See *Martin* v. *Morgan*, 3 Moore, 635. We consider this part of the case on the assumption that the defendant acted honestly in the ordinary course of duty. But the plaintiffs had a right to make what they could of the ground offered for wanting the money and the fact that it was asked for before the goods were tendered, in favor of a harsher view.

But it is said that the plaintiffs should have given prompt notice, and that they did not use reasonable diligence in doing so. We assume that they were bound to use reasonable diligence in that respect, although some of the cases seem to recognize no such rule. See e. g. *Larkin* v. *Hapgood*, 56 Vt. 597. After all, the defendant did not know the condition of the goods. It knew only of outside indications. It might be that the plaintiffs would accept them. The plaintiffs must be taken

to have known the necessary limitations of the defendant's knowledge, and that in the ordinary course of business the latter would pay over the price to the consignors. To put it at the lowest, a jury would have been warranted in finding that notice within a reasonable time to the defendant was reasonably to be expected by the latter in case a claim was made. See *Hooper* v. *Robinson*, 98 U. S. 528, 541. We assume for purposes of discussion that the plaintiffs, as soon as they knew the condition of the goods, had notice that the defendant probably had known of the indications of wet damage. But the exceptions are silent upon the point. If our assumption is correct, it is hard to say that the plaintiffs exercised due diligence when they let the time go by in which the money would be and was transmitted or ordered to be paid in Paris by the ordinary course of mail. The court, however, is not prepared to rule upon this as matter of law, but is of opinion that it is a question upon which the jury ought to pass. If the jury should find that notice was given within a reasonable time, the defendant cannot escape on the mere ground that it has paid over. It knowingly has received the money without right, and therefore is under a personal obligation to the plaintiffs, unless and until it is excused by conduct on their part which estops them from setting up their claim. *Snowdon* v. *Davis*, 1 Taunt. 359. *Townson* v. *Wilson*, 1 Camp. 396. *Sharland* v. *Milden*, 5 Hare, 469. *Ex parte Edwards, In re Chapman*, 13 Q. B. D. 747. *Moore* v. *Shields*, 121 Ind. 267, 272.

But a further defence is pressed with force, that there was no offer to return the goods. We agree with the defendant that the plaintiffs were not excused from this by the fact that the defendant was not the vendor. It represented the vendor and also had a right to be reinstated in its own lien. We agree also that the goods were not so absolutely worthless as to excuse the plaintiffs on that ground. *Morse* v. *Brackett*, 98 Mass. 205, 209. *Snow* v. *Alley*, 144 Mass. 546, 551. The plaintiffs said they were worth five or six dollars. But the jury might find, and we cannot say that they would not be justified in finding, that from the beginning the plaintiffs showed that they were willing to give up the goods if they got back their money, and that the defendant indicated plainly enough to excuse them from a ten-

der that it repudiated liability in any form. The language which we have quoted from the letter of December 19, (" We feel justified in putting in a claim for the entire shipment and hold the goods subject to your inspection,") did not in terms address itself to rescission, but a jury might find that it showed to any reasonable mind that the plaintiffs were ready for rescission, that they claimed all that they had paid and were ready to do what was necessary in order to get it. The same was true of the April letter, in which the plaintiffs complained that they had lost the use of their money. When the defendant disclaimed liability, a jury might infer that it meant to be understood and was understood to deny that the plaintiffs were in a position in which they had or could perfect a claim against it, and that a tender of five dollars' worth of spoiled paper would not change its mind and would be vain. We can have little doubt that such was the actual fact, and that the plaintiffs knew it. The only point on which we hesitate is whether the defendant indicated the fact sufficiently to satisfy technical rules.

*Exceptions sustained.*