**GARRISON COAL CO. v. HINDS, Director Gen. of R. R.**

No. 16017—Opinion Filed Dec. 22, 1925.

Rehearing Denied May 11, 1926.

1. **Carriers—Demurrage—Liability of Carrier for Displacement of Cars Being Unloaded—Burden of Proof.**

The liability of the carrier for displacement of cars in the process of unloading during the 48 hours "free time" is governed by the rules set forth herein. The carrier will make a prima facie case for recovery of demurrage, if it shows delay in unloading after the 48 hours "free time." The consignee will make out a prima facie de-

fense against the recovery by showing displacement of the cars during the 48 hours "free time," equal to the delay. Then the burden shifts to the carrier to show that the displacement of the cars within the 48 hours "free time" resulted from the reasonable conduct of the carrier's business at the station.

**2. Same—Question of Law and Fact.**

The question of the liability of the carrier for displacement of cars during the 48 hours' "free time" is a mixed question of law and fact for the jury upon proper instructions of the court.

**3. Same—Transportation Charges not Satisfied by Acceptance of Less Than Tariff Rates.**

The payment of a sum of money by the consignee for the transportation of a shipment of freight by a common carrier, less than the charge fixed by the published tariff rates for such a shipment, does not satisfy the charge as fixed by the tariff rate. This rule applies even though the consignee believes he has paid the full amount of the charge as fixed by the published tariff rate, and the common carrier accepts the same as full payment, either by mistake or intentionally.

**4. Same—Action for Demurrage—Erroneous Exclusion of Defensive Evidence.**

Record examined; held, that it was reversible error for the court to sustain an objection to offered testimony undertaking to show the period of time the cars were interfered with by the carrier through switching, within the period of the 48 hours' "free time" for unloading the shipment by the consignee.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Oklahoma County; O. L. Price, Judge.

Action by Walker D. Hinds, as Director General of Railways, against the Garrison Coal Company, a corporation, to recover alleged demurrage charges on cars for delays in unloading. Judgment for the plaintiff and defendant brings error. Reversed and remanded.

Oliver C. Black, for plaintiff in error.

Cottingham, McInnis & Green and Frank G. Anderson, for defendant in error.

Opinion by STEPHENSON, C. The defendant in error commenced his action against the plaintiff in error for the recovery of demurrage charges. The petition alleged, in substance:

(1) That various carload shipments of freight were transported to the defendant at Oklahoma City by the Santa Fe Railway Company during the first nine months of 1918. (2) That the cars were delivered at the usual and customary place for the defendant to unload the shipments; that the defendant was entitled to 48 hours' "free time" in which to unload the cars after the same were placed for unloading; that delays beyond such time resulted in a charge against the defendant according to the published tariff rates on file with the Interstate Commerce Commission. (3) That numerous delays in cars in unloading after the 48-hour period of time resulted, and that after allowing for the time cars were "off the spot," the defendant was indebted to the plaintiff on such demurrage charges as prescribed by the tariff rates in the total sum of $1,163.90.

The defendant filed its answer and amendments thereto, during the trial, which alleged the following matters as defenses to the action: (1) That the cars upon which the demurrage occurred were placed on the defendant's switch track, and that the railway interfered with the cars in switching during the 48-hour period of time charged against the defendant, and that the defendant did not receive the 48 hours' "free time" after the cars were placed for unloading. (2) That the defendant made and delivered a voucher payable to the plaintiff for all charges owing by the defendant to the plaintiff for transportation charges and demurrage on all cars involved prior to May 1st, and that the voucher stipulated that its acceptance would be treated as a satisfaction for all of such charges accruing on the cars in question prior to May 1st.

The trial of the cause resulted in a judgment for the plaintiff for the amount sued for. The defendant has appealed the cause here, and assigns the following errors for reversal and submits the same in its brief: (1) That the court committed error in refusing to permit the defendant to show that the cars were interfered with by the railway in switching, and displaced during the 48-hour period of "free time" after being placed for unloading. (2) That the payment of the charges on all cars prior to May 1st, with the voucher as worded, operated as an accord and satisfaction for all claims involved in this action, and accruing on the cars involved in this action, prior to May 1. 1918.

The place of business of the defendant is located at 300 E. Pottawatomie St., in Oklahoma City. A track which would hold about five cars was situated near and by the plant of the defendant for its service.

The Union Tracks Association, acting for the carriers in Oklahoma City, handled the switching of cars to and from the plant of the defendant. The switch track situated by the defendant's plant was the usual and customary place for delivery of carload shipments to the defendant for unloading.

The defendant offered to prove by its witnesses that each and all of the cars involved in the demurrage charges were disturbed by switching and movement of other cars during the 48-hour period of "free time," which resulted in the demurrage charges; that each and all of the cars were displaced for a period of time from 15 minutes to two hours, from four to six times a day, during the 48-hour period of "free time," which prevented the defendant from unloading the cars within the "free time."

The court sustained the objection of the plaintiff, as to the competency of the evidence as a legal defense to the action, which ruling was excepted to by the defendant.

The several amendments made by the defendant to its answer during the trial of the cause created the issue, and made the evidence competent, if the allegations of the delay constituted a legal defense.

It will be necessary to consider the obligations and duties existing between the parties during the free time for unloading, in order to pass upon the question of the competency of the evidence as offered by the defendant. The published tariffs on file in the office of the Interstate Commerce Commission gave the defendant 48 hours' "free time" in which to unload the carload shipments, and provided certain penalties for delay. The "free time" commenced to run from 7 a. m., after the cars were placed or tendered for unloading. The defendant was served by a special track, set aside for its use, that would hold about five cars. It was the duty of the plaintiff or its agent to place the cars on the particular track for the defendant to unload. The defendant was entitled to 48 hours' "free time," commencing at 7 a. m. after the cars were placed, in which to unload the same. So far as this record shows, the defendant consented to the special track being set aside for its exclusive use, and as the only point for delivery of the cars to defendant for unloading. There was no other place designated for the defendant's use in unloading the carload shipments received at the station for the defendant. The acts of the defendant were equivalent to its consent to treat the particular track as adequate means for enabling it to receive and unload the

freight consigned to the defendant. Therefore, the latter is not in a position to complain that the track would not receive and afford space for the number of cars it received, so as to enable the defendant to unload the same within the 48-hour period of "free time." This statement does not mean that the defendant would not be entitled to other trackage space for receiving and unloading shipments consigned to it, if the latter had requested and reasonably required such additional facilities. The record does not show that the defendant considered the special trackage set aside for its use inadequate for its business requirements. It was the duty of the plaintiff to give the defendant notice of the arrival of the freight consigned to the latter, if the plaintiff was unable to place the cars upon the defendant's track on account of other cars being there in the process of loading or unloading. Thereupon, the free time in which the defendant would be entitled to to unload the cars without demurrage would commence to run at 7 a. m. after receiving the notice. The defendant would be chargeable with demurrage for delays in unloading the cars beyond the 48-hour period of "free time," although delivery was prevented by the presence of other cars on defendant's trackage in the process of loading or unloading. The same rule would apply to the defendant, if the latter was unable to receive the cars upon the track on account of his fault or wrong. Davis v. Timmonville Oil Co., 285 Fed. 470; Davis v. Greensborough Warehouse & Storage Co., 186 N. C. 676, 120 S. E. 462.

The matters of disturbance and moving of cars after placement for unloading by the consignee, on account of necessary and reasonable switching of shipments for other consignees at the station, and the movement of trains and cars, as necessarily and reasonably involved in the conduct of the carrier's general business about the station, were involved and entered into the establishment of the 48-hour period of "free time." The same matters were involved in fixing the amount of the demurrage charges for delays. Therefore, the length of time in which the consignees are allowed to unload their freight and the penalties provided for delays beyond the "free time," were measured according to the usual conduct of the carrier's business. There may be numerous business concerns and people who will require the carrier's facilities in the conduct of their business at the station. It is the duty of the carrier to furnish reasonable trackage facilities and means to serve the consignees at the particular station, as mea-

sured by the volume of business handled in and out of the station. Each consignee and shipper at the station is entitled to the service which reasonable facilities ought to afford him. The displacement of cars and consequential delays to shippers and consignees, may result at particular stations, even though the carrier is affording reasonable means and facilities for the conduct of its business at the particular station. The consignee must bear such losses out of his 48-hour" "free time" as result from the reasonable conduct of the carrier's business at the station. The liability of the shipper or consignee to bear the delay depends upon whether the carrier has furnished reasonably adequate facilities for handling the general business at the station, and whether the disturbance of the cars after placement was reasonably necessary, if reasonable facilities had been afforded the general public at the station. If it became necessary for the carrier to displace cars within the 48-hour period of time, in the reasonable conduct of its business at the station, it was the duty of the carrier to replace such cars for unloading with reasonable dispatch, consistent with the general conduct of the carrier's business at the station, as measured by the facilities required to meet the demands of the public at the station. These matters are questions of fact for determination by the jury, or the court, in each particular case, according to the foregoing rules. Therefore, it is a mixed question of fact and law for the jury upon proper instructions of the court, as to the liability of the carrier for displacement of cars within the 48-hour period of "free time" for unloading the cars. Penn. R. Co. v. Keally, 232 Pa. 567, 81 Atl. 646.

The carrier will make the prima facie showing for recovery of demurrage charges when it shows that the consignee has consumed time for unloading the car, after the lapse of 48 hours, from the time of the actual, or constructive, delivery of the car to the consignee. The consignee will make a prima facie defense against the recovery by showing that the delayed time was equal to the time the car was displaced by the carrier. The burden then shifts to the carrier to show that the displacement of the car resulted in the reasonable conduct of its business at the station as measured by the rules herein stated.

We think the foregoing rules place the respective burdens in the order. according to the facilities of the parties to discharge such burdens.

The trial court committed reversible error in refusing the evidence as offered by the defendant to show the displacement of the cars by the carrier. However, the effect of the evidence should be confined to a prima facie establishment of the defense. The carrier may overcome the prima facie showing relied on to establish the defense by showing that such displacement resulted in the reasonable conduct of its business about the station.

The answer of the defendant to the effect that the plaintiff accepted a voucher, which contained a notation to the effect that it was in full settlement of all charges prior to May 1, 1918, does not constitute a legal defense. The effect of the acceptance of the voucher was to operate as a satisfaction of that portion of the indebtedness, as created by the tariff, equal to the sum of money received from the voucher. The carrier's acceptance of a payment for freight and demurrage charges, less than the amount due according to the rates and charges prescribed by the tariff, does not operate as a satisfaction for a greater charge than the amount of the payment. A payment of a less sum of money than the amount of charges as fixed by the tariff would not operate to satisfy fully the indebtedness, even though the consignee and carrier intended the less payment to be full payment of the charges. The rate laws were enacted and the tariff rates created and established for the purpose of preventing discrimination in favor of or against consignees and shippers. A discrimination in favor of or against a shipper or consignee cannot be justified, either by mistake or agreement. The carrier is obligated to charge for services and receive compensation for such services according to the published tariff rates, and the consignees and shippers must pay for such services according to the prescribed rates. Mistake or agreement will not relieve the parties from such obligations. Gault Lumber Co. v. A., T. & S. F. Ry. Co., 37 Okla. 24, 130 Pac. 291; Louisiana Ry. & Navigation Co. v. Holly (La.) 53 South. 882; G., C. & S. F. Ry. Co. v. Hefley, 158 U. S. 98; T. & P. Ry. Co. v. Mugg, 202 U. S. 242; McFadden v. A. G. S. R. Co., 241 Fed. 562; A., T. & S. F. Ry. Co. v. Ehret. 52 Okla. 368, 152 Pac. 1107.

The judgment is reversed and remanded for further proceedings in accordance with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 10 C. J. p. 469, §743; 4 R. C. L. p. 865; 1 R. C. L. Supp. p. 1229; 5 R. C. L. Supp. p. 260. (2) 10 C. J. p. 471, §745. (3) 10 C. J. p. 512, §827 (4) 10 C. J. p. 471. §745 (anno).