## 19501. SEABOARD AIR-LINE RAILWAY COMPANY v. DAUGHERTY-McKEY & COMPANY.

DECIDED JULY 13, 1929.

192

*Randolph, Parker & Fortson,* for plaintiff in error.

*Little & Dickerson, Watkins, Asbill & Watkins,* contra.

BELL, J. (After stating the foregoing facts.) As will be seen from the above statement, the plaintiff has expressly sued in tort, and we are not concerned with any question as to what might have been its rights under some other form of action. The ultimate question for determination is whether the petition shows any breach of duty owed by the defendant to the plaintiff, with resulting damage to the latter.

That the demurrage charges were illegal can not be reasonably controverted under the facts alleged. According to the averments, there was no delivery to the consignee at Hampton, nor any offer of delivery, nor any act which could be treated as the equivalent of either. The general rule is that before a carrier is authorized to charge demurrage, the carrier must deliver the goods at such a point as to enable the consignee to receive them with reasonable facility and convenience; this was not done in the present case. *Miller* v. *Georgia R. &c. Co.,* 88 *Ga.* 563 (5) (15 S. E. 316, 18 L. R. A. 323, 30 Am. St. R. 170) ; Garrison Coal Co. *v.* Hines, 118 Okla. 251 (247 Pac. 62, 46 A. L. R. 1151) ; 4 R. C. L. 865; 10 C. J. 467. Since there was nothing amounting to a delivery, the charge for demurrage was not justified, and this is true whether the original shipments were terminated at Hampton, with reshipments to final destinations, or were continuous from points of origin to points of delivery, interrupted only by diversion.

The defendant contends, however, that, even assuming that the claim for demurrage was unfounded, it acted innocently in making

the collection, and, therefore, has committed no wrong against the plaintiff. The defendant's position is, that since the plaintiff makes no complaint as to the basis or rate upon which the demurrage was computed, but seeks recovery upon the ground that the cars were not detained by any fault of the shipper or consignee, and that since the defendant merely collected the demurrage as advance charges by a prior carrier, it had the right to assume that the charges were properly made, and could not be held liable unless it participated in making the assessment, or, before collecting it, was put upon notice of its illegality. See, in this connection, *Georgia R. Co.* v. *Murrah,* 85 *Ga.* 347 (11 S. E. 779) ; *Goodin* v. *Southern Ry. Co.,* 125 *Ga.* 630 (2) (54 S. E. 720, 6 L. R. A. (N. S.) 1054, 5 Ann. Cas. 573) ; *Seaboard Air-Line Ry.* v. *Southern Flour &c. Co.,* 138 *Ga.* 604 (75 S. E. 654) ; Cincinnati &c. Ry. Co. *v.* Rankin, 241 U. S. 319, 36 Sup. Ct. 555, 60 L. ed. 1022, L. R. A. 1917A, 265) ; New York Central &c. R. Co. *v.* Beaham, 242 U. S. 148 (37 Sup. Ct. 43, 61 L. ed. 210).

Assuming, without deciding, that the defendant as delivering carrier could not be subjected to a tort action for the recovery of the amount of such demurrage, where its only connection with the transaction was to make collection for and on demand of the previous carrier, the allegations of the petition are not limited to such a state of facts. If the charges were excessive on their face, or in comparison with published tariffs, the defendant would be ipso facto charged with notice thereof; but the contention is that the defendant could not be held so impressed where the right to the demurrage depended solely upon a question of fact as to the status of the cars in the hands of the previous carrier. Whether in the latter case it would be necessary for the plaintiff to show that the defendant participated in the illegal assessment or knew of its illegality at the time of the collection, it is our opinion that the petition easily alleges each of these facts, and that with either of them present the defendant would be liable.

For the purposes of this case, we may concede the soundness of the position taken by counsel for the defendant, except as to their construction of the petition. We think they have failed to give effect to certain implications, which, when included with the express averments, are sufficient to sustain the cause of action, even under the theory urged.

While the claim is that the demurrage was charged for times when the cars were stationed on the line of the Georgia Southern and Florida, yet other allegations are to the effect that deliveries either from that company or from the defendant were made, and could be made, only upon a private siding on the track of the defendant, and that the two companies maintained at Hampton a joint freight-agent, who assessed the demurrage "and billed said demurrage out on Seaboard Air-Line Railway Company way-bills." Since deliveries to the particular consignee could not be made except upon the line of the defendant, and since presumptively the defendant through its local agent had knowledge of the business done upon its line, the inference is that it knew that no deliveries had been made or tendered touching the cars in question.

Moreover, the demurrage was actually assessed by an agent who was jointly employed by the two companies and who must have known the facts. Whether the defendant would be charged with knowledge which such agent obtained in conducting the business alone of the other company, as in making the assessment (*Hotel Equipment Co.* v. *Liddell,* 32 *Ga. App.* 590 (2), 124 S. E. 92), the further shipments or diversions had to be accepted by some one in behalf of the defendant, and it appears that the same agent made such acceptance, by billing the shipments out on defendant's way-bills. With certain qualifications not here material, it is a well-settled rule that knowledge of a fact received by an agent at a time when he is not acting as such, but acquired so recently as to warrant the assumption that he still has it in mind when he subsequently acts for his principal, will be imputed to the principal for the purposes of the transaction under investigation. *German-American Mutual Life Asso.* v. *Farley,* 102 *Ga.* 720 (2) (29 S. E. 615).

From the allegations made, it is a fair inference that the agent not only knew that no demurrage had accrued, but that this knowledge was present in his mind at the time he accepted the shipment on behalf of the defendant. It is thus apparent that the defendant knowingly and actively participated in making the illegal charge, and, hence, under generally accepted principles should be held liable as a tort-feasor. *Western & Atlantic R. Co.* v. *White Provision Co.,* 142 *Ga.* 246 (2) (82 S. E. 644) ; Hardy *v.* American Express Co., 182 Mass. 328 (65 N. E. 375, 59 L. R. A. 731) ; Cincinnati, New Orleans &c. Ry. Co. *v.* Rankin, supra; Louisville &

Nashville R. Co. *v.* Sloss-Sheffield Co., 269 U. S. 217 (46 Sup. Ct. 73, 70 L. ed. 242).

In so far as the shipments may have been interstate, the cause of action could be predicated upon section 8 of the interstate-commerce act (24 Stat. 382, U. S. Comp. Stat. § 8572, 4 Fed. Stat. Ann. (2d ed.) 430, 49 U. S. C. A. § 8), which declares that if "any common carrier . . shall do, cause to be done, or permit to be done any act, matter or thing in this act prohibited or declared to be unlawful, . . such common carrier shall be liable . . for the full amount of damages sustained in consequence of any such violation of the provisions of this act." While the amendment of March 4, 1915, known as the Cummins amendment, renders only the initial carrier liable for loss or damage occurring on any part of the route, each connecting carrier is still liable for its own wrong. Oregon-Washington R. Co. *v.* McGinn, 258 U. S. 409 (42 Sup. Ct. 332, 66 L. ed. 689); *Fleshnar* v. *Southern Ry. Co.,* 160 *Ga.* 205 (3) (127 S. E. 768); *Illinois Central R. Co.* v. *Banks,* 31 *Ga. App.* 756 (2) (122 S. E. 85). Even if the shipments should be considered as entirely local or intrastate, so as to exclude Federal statutes, the allegations were still sufficient to state a cause of action under common-law principles.

In view of the other sufficient allegations, it is unnecessary to decide whether liability of the defendant as terminal carrier would result merely from its collection of such demurrage. *Van Dalsem* v. *Caldwell,* 33 *Ga. App.* 88 (7) (125 S. E. 716), and cit.

The fact that the plaintiff sold to his customers at delivered prices makes it the proper person to sue. Louisville & Nashville R. Co. *v.* Sloss-Sheffield Co., supra.

The Federal act of March 4, 1927, as to liability of delivering carriers, of course, can not apply to the present case, the facts of which arose before the passage of that act.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*