**UNION BARGE LINE CORPORATION,**
**Plaintiff,**

v.

**CARTER CONSTRUCTION CO., INC.,**
**Defendant.**

**No. LR–72–C–166.**

United States District Court,
E. D. Arkansas, W. D.

Sept. 28, 1972.

Harry E. McDermott, Jr., Little Rock, Ark. (Macleay, Lynch, Bernhard &

Gregg, Washington, D. C., of counsel), for plaintiff.

O. Wendall Hall, Jr., Benton, Ark., for defendant.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This is a suit for transportation charges brought by plaintiff, Union Barge Line Corporation, against the defendant, Carter Construction Co., Inc. The defendant denies liability. By virtue of 28 U.S.C.A., section 1337 the Court has jurisdiction of the complaint without regard to the citizenship of the parties or the amount in controversy.

The cause is now before the Court on the motion of plaintiff for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The burden is on plaintiff to establish that the case does not present any genuine issue as to any material fact and that plaintiff is entitled to judgment as a matter of law.

Rule 56(d) provides that if on motion under that Rule the case is not fully disposed of, the Court shall, if practicable, ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted, and shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. It is provided that upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

The facts upon which the claim of plaintiff is based are set forth in the complaint and are substantially without dispute.

Plaintiff is a Pennsylvania corporation with its principal place of business in the City of Pittsburgh. It is a certificated common carrier by water and is covered by Part III of the Interstate Commerce Act, 49 U.S.C.A. § 901 et seq. Its transportation charges, including demurrage charges, are governed by tariffs on file with the Interstate Commerce Commission; it is required to collect its charges in accordance with the tariffs and is forbidden to engage in discriminatory practices or to grant rebates to shippers or consignees. 49 U.S.C.A. § 906.

Plaintiff operates tow boats and barges on the navigable waters of the United States, including the Arkansas River which is now navigable from its junction with the Mississippi River to Tulsa, Oklahoma. Plaintiff's tariffs allow a consignee of freight to whom a barge is delivered a certain number of days free time within which to unload the barge and make it available to plaintiff for further use. After the free time has expired, demurrage time sets in. The demurrage rate is $45 per day for the first three days of demurrage time; $70 per day for the next three days, and $105 per day for additional days.

The defendant is an Arkansas corporation with its principal place of business in the City of Benton in this State. It is engaged in the construction business in the course of which it makes use of quantities of steel.

In 1969 and 1970 defendant purchased steel which was shipped to defendant in interstate commerce in four barges owned and operated by plaintiff. The barges were delivered for unloading at Pendleton Ferry on the Arkansas in the southeast part of this State. Additionally, plaintiff delivered an empty barge to defendant. The freight on the loaded barges was paid by the shipper.

All four barges incurred demurrage charges which, after adjustment with respect to one barge, totaled $5,370. The charge for delivering the empty barge was $250 so that the total claim of plaintiff, after adjustment, was $5,620. Prior to adjustment the claim had been

$5,725. Due demand was made by plaintiff for payment of its claim.

The defendant claimed offsets against the demand, which offsets will be described, and was willing to pay only $1,446.24. It sent or gave its check in that amount to plaintiff, and plaintiff accepted and cashed it under protest, and then brought this suit for the difference.

The first offset claimed by defendant was in the sum of $1,744.50 which was the alleged cost to defendant of removing hatch covers from three of the four loaded barges. The second offset totaling $420 involved a dispute about four days of demurrage time at the rate of $105 per day. The third offset amounting to $2,114.26 arose out of the fact that in January 1972 plaintiff's tow boat, Arkansas Traveler, was involved in a collision with a dredge belonging to the defendant and which was anchored or operating in the Arkansas River at River Mile 45; defendant took the position that the collision and damage to the barge were caused by negligence on the part of the plaintiff's employees.

In its pleading filed in this case and in connection with the pending motion the defendant contends that it was entitled to the offsets, and that it owes the plaintiff nothing. Defendant does not claim that plaintiff is indebted to it.

Defendant's pleading consists of an "Answer," a "First Counterclaim," and a "Second Counterclaim." In its Answer the defendant alleges that there was a bona fide dispute between the parties about the offsets claimed by the defendant, and that the action of plaintiff in accepting, albeit under protest, defendant's check for $1,446.24 amounted to an accord and satisfaction. The First Counterclaim involves the cost of removing the hatches from three of the barges, and the Second Counterclaim involves the 1972 damage to the dredge.

As the Court characterizes them, the two counterclaims are alternative to the plea of accord and satisfaction appearing in the Answer, and the counterclaims are actually pleaded by way of offsets against the demand of plaintiff. See Rule 13(c), F.R.Civ.P.

In support of its motion plaintiff contends that under the Interstate Commerce Act transportation charges of interstate carriers by water are not legally subject to offsets or compromises, and that the claim of accord and satisfaction cannot be sustained legally. Plaintiff also contends that under the Act a consignee sued for demurrage or other transportation charges is not permitted to plead offsets or counterclaims. Plaintiff would have the Court give it judgment for the amount of its charges and remit defendant to an independent action to recover for plaintiff's alleged breach of contract of carriage and for plaintiff's alleged negligence resulting in damage to the defendant's dredge.

■ The Court readily agrees with plaintiff that the claim of accord and satisfaction must fail. The liability of a consignee of freight to pay demurrage charges due under established tariffs of an interstate carrier governed by the Interstate Commerce Act was considered by this Court a number of years ago in St. Louis, Southwestern Railway Co. v. Mays, E.D.Ark., 1959, 177 F.Supp. 182. In that case the Court said (p. 184 of 177 F.Supp.):

"In the application of the rule that carriers, shippers and consignees are bound by the provisions of the tariffs filed by the former, it is now well settled that where, as here, demurrage charges are prescribed by tariff, and where a liability for such charges accrues, the carrier is under a duty to collect and the shipper or consignee is under a duty to pay the same. They have no choice in the matter, and it is not a legitimate subject for compromise or settlement between them. Garrison Coal Co. v. Hines, 118 Okl. 251, 247 P. 62, 46 A.L.R. 1151; Southern R. Co. v. White, 6 Cir., 284 F. 560, 26 A.L.R. 1429; St. Louis-

Southwestern Ry. Co. v. Farrell, D.C. Ark., 114 F.Supp. 486; Chicago, B. & Q. R. Co. v. Blunk, D.C. Iowa, 101 F. Supp. 219. Were the law otherwise, waivers and adjustments of demurrage claims would be ready means for the effectuation of prohibited preferences, discriminations and rebates. See Pennsylvania R. Co. v. Kittanning Iron & Steel Mfg. Co., 253 U.S. 319, 324, 40 S.Ct. 532, 64 L.Ed. 928, and Chicago, B. & Q. R. Co. v. Blunk, supra, 101 F.Supp. at page 222 . . . ."

Somewhat more discussion is called for in connection with plaintiff's attack on the counterclaims.

Rule 13(a) deals with counterclaims which arise out of the transaction or occurrence that is the subject matter of the opposing party's claim. Those counterclaims are considered ancillary to the claim of the opposing party, and if the federal court has jurisdiction of that claim, it may entertain the counterclaim even though the latter is not supported by independent grounds of federal jurisdiction. A rule 13(a) counterclaim is denominated a "compulsory counterclaim," and it must be filed or the cause of action represented by it is lost.

Rule 13(b) relates to "permissive counterclaims." A permissive counterclaim is one that does not arise out of the same transaction or occurrence that is the subject matter of the opposing party's claim. A permissive counterclaim differs from a compulsory counterclaim in two respects. It does not have to be filed in order to preserve the cause of action, and it must be supported by independent grounds of federal jurisdiction. Wright and Miller, Federal Practice & Procedure, §§ 1222 and 1223.

■ As to the First Counterclaim, it is clear that it falls squarely within the terms of Rule 13(a), and the Court is convinced not only that defendant has a right to maintain it here but also that it is required to maintain it here or lose

its claim based on the expense of removing the hatches from the barges. The applicability of Rule 13(a) to offsetting claims of shippers or consignees against carriers suing for transportation charges was early recognized in Pennsylvania R. Co. v. Musante-Phillips, Inc., N.D.Cal., 1941, 42 F.Supp. 340, which was decided only three years after the Federal Rules of Civil Procedure went into effect.

Counsel for plaintiff does not refer to Rule 13(a) in his brief, and the decisions that he cites on the counterclaim phase of the case all antedate the adoption of the Rules and also antedate the decision of the Supreme Court of the United States in the leading case of Chicago & Northwestern Railway Co. v. Lindell, 1930, 281 U.S. 14, 50 S.Ct. 200, 74 L.Ed. 670.

Prior to that decision the lower federal courts were in conflict with respect to the question of whether a shipper or consignee sued for transportation charges by an interstate carrier could set up as an offset or counterclaim a claim for damages to cargo in transit. The problem was complicated by the fact that at that time the federal courts in actions at law followed the procedural rules of the States in which they sat and those rules differed in the area of counterpleading. A further complication was the fact that it was settled that transportation charges had to be paid in cash.

In *Lindell* however the Court laid the question to rest by holding that such set-offs and counterclaims could be pleaded to the extent permitted by State procedural law, and that, indeed, this method of settling disputes between shippers and carriers should be encouraged as avoiding "circuity of action, inconvenience, expense, consumption of the courts' time, and injustice." 281 U.S. at 17, 50 S.Ct. at 201. The Court then

went on to say (281 U.S. at 17–18, 50 S. Ct. at 201):

"The practice of determining claims of shippers for loss or damage in suits brought by carriers to collect transportation charges is not repugnant to the rule prohibiting the payment of such charges otherwise than in money. The adjudication in one suit of the respective claims of plaintiff and defendant is the practical equivalent of charging a judgment obtained in one action against that secured in another. Neither is to be distinguished from payment in money.

"It is well understood that payment by carriers to shippers under the guise of settling claims for loss and damage may in effect constitute discrimination that the act was intended to prevent. But it is not suggested how opportunity for collusion in respect of such matters would be lessened by abolishing counterclaims in cases such as this. Collusion and fraud may be practiced in the defense and settlement of separate actions brought on such claims, as well as when the same matters are put forward as offsets or counterclaims.

"The act ought not to be construed to put aside state laws and long-established practice in respect of pleading unless the intention of Congress so to do is plain. There appears no reasonable probability that the relegation of shippers to separate actions for the enforcement of their claims for loss or damage would operate more effectively to enforce the purpose of Congress to prevent discrimination. There is no substantial ground upon which the act may be given the construction for which the carrier contends."

With the promulgation of the Rules in 1938 counterclaim practice became governed by Rule 13, and *Lindell* has been followed in a substantial number of transportation charge cases decided since the Rules went into effect. See e. g.: Southern Pacific Co. v. Miller Abattoir Co., 3 Cir., 1972, 454 F.2d 357; In re Yale Express System, Inc., 2 Cir., 1966, 362 F.2d 111; Pennsylvania R. Co. v. Miller, 5 Cir., 1942, 124 F.2d 160; and Pennsylvania R. Co. v. Musante-Phillips, Inc., supra.

■ A different situation is presented with respect to defendant's Second Counterclaim. The collision between plaintiff's tow boat and defendant's dredge took place in 1972 and did not arise out of the same transaction or occurrence as is the subject matter of plaintiff's claim. It is a permissive counterclaim and must be supported by independent jurisdictional grounds.

This counterclaim could not be maintained here on the basis of diversity of citizenship because of the absence of jurisdictional amount. However, the collision occurred on admiralty waters, and the Court has jurisdiction under 28 U. S.C.A., section 1333 unless the Interstate Commerce Act prohibits the maintenance of a permissive counterclaim sounding in tort against a carrier suing to collect transportation charges.

All of the cases heretofore cited in connection with defendant's First Counterclaim have involved counterclaims that would properly be classified as compulsory. However, the rationale of *Lindell* is broad enough to include permissive as well as compulsory counterclaims. To put it another way, the Court sees no reason for a carrier suing for transportation charges to occupy any other or better position than any other plaintiff as far as counterclaims are concerned. So, the Second Counterclaim as well as the First Counterclaim will be entertained in this action.

Plaintiff's motion for summary judgment will be denied. However, the order to be entered will strike from the defendant's answer the plea of accord and satisfaction.